Riley, J.
This cause is described in the Report as an action of contract or tort, to recover damages for personal injuries and pain and suffering of body and mind sustained by the plaintiff by reason of having been served and eaten food at the defendant’s place of business, which food was improper and unfit for human consumption.
The defendant’s answer is a general denial and an allegation of contributory negligence on the part of the plaintiff.
*74 It is stated that the Declaration sets forth a good and sufficient cause of action. .The plaintiff’s brief seems to treat the action as one of tort while in the defedant’s brief it is treated as an action.of contract. As no question of pleading has been raised, we assume the only question is whether the plaintiff is entitled to recover in either form of action. Ward vs. Great Atlantic & Pacific Tea Co., 231 Mass. 90 at 92.
All the relevant evidence offered and the decision of the trial judge is contained in the following Finding of Facts filed by him:
‘ ‘ Shortly after 12 o ’clock on the morning of August 8, 1936, the plaintiff with two companions went to a diner conducted by the defendant. He ordered a chicken salad sandwich and a cup' of coffee. He saw the sandwich made up from bread and some prepared chicken taken from a pan on a shelf behind the counter. He ‘ate most of the first half of the sandwich, one bite left, and then looked down on the plate and saw a maggot crawling on the plate. It had crawled from the other half of. the sandwich’. He called it to the attention of the waiter who served him. The waiter picked it up and threw it away. The waiter then took the pan of salad down from the shelf, said he would have to get rid of it, and threw the contents under the counter. The plaintiff stayed around for a while and then went home. A short time after he got home he vomited. At about four o’clock in the morning he had an attack of diarrhea which continued for two days. He was employed as a care-taker of a club and remained at work during these two days from 8 o’clock a. m. to 12 o’clock p. m. He did not do all the work required of him, but took it easy during these two days. He did not remember what he had eaten for supper, and did not eat or drink anything from supper time to the above occurrence. There was no evidence that the half of the sandwich which he had almost eaten tasted ■ bad.- He did not call in a.physician. There was no medical testimony. At the close of the plaintiff’s evi *75 deuce the defendant rested and filed a motion ‘that a finding be directed for the defendant’. I find for the defendant.”
The plaintiff claims to be aggrieved by the finriicg of the trial judge for the defendant and his allowance of the defendant’s motion for a directed finding for the defendant. A copy of this motion is not set out in the Report. It is simply referred to as “a motion to direct a finding for the defendant”. The plaintiff’s request for report is improperly incorporated in the Report by the trial judge. It is therein stated, as one of the reasons for the request for report, that “The trial court in allowing the defendant’s motion for a directed finding for the reason therein stated, namely that ‘There is no evidence of casual connection between the damage and the eating of the food’ shows that the trial court erred in making a finding for the defendant. ” There is further recitation from this request for a report that the trial court made certain statements from the bench in reference to his interpretation of the law applicable to the case. In view of the fact that the trial judge later filed a written' decision, his oral statements in reference to his understanding of the law, previously made at the trial, are of no consequence. Commonwealth vs. Dascalakis, 246 Mass. 12 at 18. As the defendant’s motion is not set out or further described in the Report, we cannot determine whether this motion sought a ruling of law by the trial judge or simply requested a finding of -fact by him. It is incumbent upon the pa'rty seeking a Report to set out enough in the record to enable an Appellate Tribunal to determine whether there has been prejudicial error. Vengrow vs. Grimes, 274 Mass. 278, 279.
It seems appropriate to observe that this case, like many others in the District Courts, is unnecessarily complicated by the filing of a motion for finding. There is no require *76 ment under District Court procedure for the filing of such a motion. Rule 27 of the District Court Rules (1932) specifically provides for requests for rulings upon all the evidence, requiring such requests to be accompanied by specifications. See Castano vs. Leone, 278 Mass. 429. The practice of the indiscriminate filing of motions for findings undoubtedly arises by reason of the requirement of Superior Court Rule 71 (1932) that the question whether the court should order a verdict must be raised by motion. It has been held that this rule has no application to a case tried without a jury. Fisher vs. Drew, 247 Mass. 178, 181. Such motions, in cases without a jury, have, however, been given consideration by our Supreme Court presumably on the theory that a question of law, plainly raised, without conflicting with any rule of court, will be given consideration irrespective of the name by which the particular desired ruling is designated. See Castano vs. Leone, 278 Mass. 429 at 431 and cases cited. New Bedford etc. Co. vs. Andres Co., 258 Mass. 13. Ashapa vs. Reed, 280 Mass. 514. Compare, however, Stowell vs. Hood & Sons, 288 Mass. 555, 557 and cases cited. In Gustafson vs. Gatto, 1937 A. S. 75, decided since this case was presented, the Bill of Exceptions shows that the defendant’s motion was that the plaintiff was not entitled on the evidence, as matter of law, to recover against the defendant. This clearly indicated that the defendant’s motion sought a ruling of law.
From the description of• the defendant’s motion in the case at bar, it closely resembles the motion of the defendane in Ashapa vs. Reed, 280 Mass. 514. It differs only in that it contains the word “directed” before the word “finding”. The word “directed” is ordinarily used in connection with a verdict, denoting that the trial judge directs the jury to bring in a certain verdict. It seems as inapplicable to a trial before a judge as the use of the word “verdict” *77 in such a proceeding. The action of the trial judge in the instant case follows very closely that of the judge in the case of Ashapa vs. Reed. The order of the trial judge in the latter case was “Motion in each case for finding for the defendant allowed and court finds for the defendant in each case. ’ ’ In the case before us the court, in its findings, states “At the close of the plaintiff’s evidence the defendant rested and filed a motion ‘that a finding be directed for the defendant’. I find for the defendant.” The court says in Ashapa vs. Reed, 280 Mass. 514 at 516. “The plaintiffs might have protected themselves against any possible misunderstanding on their part by a request for a ruling of law to the effect that on all the evidence the negligence of the defendant was a question of fact. The question raised by the exceptions therefore is whether, as matter of law, a general finding in favor of the defendant was permissible on all the evidence. Such a finding will stand provided it can be supported on any reasonable view of the evidence with all rational inferences of which it is susceptible.” We think that this case is governed by that decision. Although the trial judge allowed the defendant’s motion for a directed finding, he also made a specific finding for the defendant and if there was any error in the allowance of this motion it comes within the authority of Harding vs. Broadway National Bank of Chelsea, 1936 A. S. 661, 668, and was not prejudicial error.
Upon the evidence recited in the Report and the facts found by the trial judge, a finding for the defendant was well warranted upon the grounds that the plaintiff had not proved by a preponderance of the evidence that his alleged illness was caused by food furnished him by the defendant which was improper and unfit for human consumption. The only direct evidence that the food was unfit was that a maggot covered with salad oil was seen crawling on the plate *78 away from one half of a sandwich when the plaintiff had nearly finished eating the other half of the sandwich. While the defendant’s servant threw away the sandwich and also the prepared chicken from which the sandwich was made, there was no evidence that he inspected it or that there were any other maggots in this prepared chicken or the remaining part of the sandwich. The maggot may have come from the prepared chicken, the salad dressing or the bread with which the sandwich was made. The mere presence of a maggot crawling on a plate in a lunchcart is not enough to show that any or all of the food on the plate is unfit or unwholesome. It is a well known fact that worms, which are commonly known as maggots, are present in apples and other fruits and vegetables without rendering such food unwholesome if they are removed and their presence in cheese has often been said to indicate the fitness of that food.
It is to be borne in mind that this is not a case where the plaintiff was immediately nauseated and made ill, either by the taste or the sight of the maggot. He remained at the defendant’s place for some little time and was not taken ill until some period after he had returned home. There is no evidence that the food he had tasted or smelled bad. There is no evidence of what he ate for his supper some hours before he came to the defendant’s place of business. There is no medical evidence as to the nature of his illness or the time at which an illness might result after eating unwholesome food. In fact, there is nothing in the case except the maggot and the sequence of events. In the case of Monahan vs. Economy Grocery Stores Corp., 282 Mass. 548, the fact that a cat, which the plaintiff had had for about three months, ate some of the food in question and had not been seen since, was not considered evidence of the unwholesomeness of the food. It is possible that the plaintiff may. have been made ill by eating the defendant’s food. *79 However, his illness occurred in the middle of the summer, after he apparently had been about all day, and it may have been caused by the food he had eaten at supper or by something else, or it may have been a seasonal illness. There is no evidence that he was suffering from food poisoning and the cause of his indisposition was so conjectural that a finding for the plaintiff was not required. In Berringer vs. Ocean Steamship Co. of Savannah, 240 Mass. 405, Smith vs. Gerrish, 256 Mass. 183, Schuler vs. Union News Co., Mass. A. S. (1936) 1273, and Johnson vs. Kanavos, Mass. A. S. (1937) 193, the food tasted bad and there was other evidence warranting an inference that the food was unwholesome and caused the illness of the plaintiffs.
It seems to us that this case is within the class of cases of which Gracey vs. Waldorf System, Inc., 251 Mass. 76 and Monahan vs. Economy Grocery Stores, 282 Mass. 548, are an example, and that the plaintiff was not, as matter of law, entitled to recover on the evidence.
In any event, we find no prejudicial error in the allowance of the defendant’s motion and the finding for the defendant and the Report is ordered dismissed.